[Cite as *Charna v. Charna*, 2026-Ohio-2823.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

MICHAEL L. CHARNA,                       :

    Plaintiff-Appellee,                  :               No. 115717

v.                                       :

WENDY J. CHARNA, ET AL.,                 :

    Defendants-Appellants.               :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-15-356078

---

### *Appearances:*

Taft, Stettinius & Hollister LLP and Jill Friedman Helfman, *for appellee*.

Hans C. Kuenzi Co. L.P.A. and Hans C. Kuenzi, *for appellant*.

---

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant Wendy J. Charna ("Wendy") appeals from the trial court's September 23, 2025 judgment entry regarding post-decree motions

filed by Wendy and her ex-husband, plaintiff-appellee Michael L. Charna ("Michael"). For the following reasons, we affirm.

## I. Factual and Procedural History

## A. Divorce Decree

{¶ 2} During the duration of Wendy and Michael's 34-year marriage, Michael worked for the Merit Brass Company ("Merit Brass"), which was owned by Wendy's family. The couple's marriage was terminated by a January 4, 2016 divorce decree. Under the divorce decree, Michael's Merit Brass 401(k) account was divided equally with Wendy. Pursuant to the separation agreement that was incorporated into the divorce decree, Michael paid Wendy spousal support in accordance with a two-tier formula that reads, verbatim:

Tier I Spousal Support:

Effective on January 1, 2016 and subject to the provisions of Section 2.2 and commencing on the first day of each successive month (or according to his pay periods), husband shall pay Tier I spousal support in the sum of Five Thousand Six Hundred Dollars ($5,600.00) per month. In the event that husband's base salary is reduced from the amount of his base salary on December 23, 2015, through no voluntary act on husband's part, the amount of husband's spousal support obligation shall be reduced by an amount that would result in after-tax income to wife of 43.5% of the parties' joint income according to a finPlan (or similar program) calculation, with an imputation to wife of earned income of $81,832.

Tier II Spousal Support:

Effective on January 1, 2016, in addition to Tier I spousal support, husband shall pay Tier II spousal support to wife in the amount of 37.825% of his earnings in excess of his base salary, with such excess earnings to include but not be limited to any bonus and vacation pay

that he receives from his employment. Such payments shall be paid to wife within seven (7) days of husband's receipt of the excess pay.

Husband's base salary was recently decreased by 20%. In the event that husband's base salary is restored in whole or in part to the amount of his base salary in May 2015, wife shall be entitled to 37.825% of such increase in husband's base salary as additional Tier II spousal support.

Jan. 4, 2016 judgment entry of divorce, p. 8-9. The separation agreement vested the court with jurisdiction to modify spousal-support obligations in the event of a substantial change of circumstances.

## B. Initial Post-Decree Litigation

{¶ 3} The parties first engaged in post-decree litigation in December 2021, when Michael filed a motion to modify spousal support and Wendy filed eight motions. The magistrate issued a decision on December 20, 2023, that found, in pertinent part, Merit Brass's payments of life insurance premiums and automobile allowances were perks to be included in Michael's Tier II spousal-support obligation ("additional Tier II spousal-support obligations") and determined a reduction of Michael's Tier I spousal-support obligation to $2,558 per month was reasonable and fair. The trial court issued a July 15, 2024 judgment entry finding that the amount of the additional Tier II spousal-support obligations due from the date of divorce in 2016 until 2022 remained to be determined; the parties subsequently resolved the

additional spousal-support obligations with a lump sum payment as noted in an October 28, 2024 agreed judgment entry.

## C. Current Post-Decree Litigation

{¶ 4} During the pendency of the initial post-decree proceedings from December 2021 through October 2024, Wendy also filed a motion to modify support on April 30, 2024, and on September 20, 2024, Michael filed a motion to modify and terminate his spousal-support obligations because he had retired from Merit Brass. Wendy responded with numerous motions including a September 25, 2024 motion to show cause in which she alleged that Michael failed to pay, as Tier II spousal support, employer perks including matching contributions to his retirement plans. Wendy filed another show-cause motion on December 31, 2024, seeking Tier I and Tier II spousal support. On January 27, 2025, Michael filed a motion to dismiss Wendy's show-cause motions, arguing that the issue of employer perks constituting Tier II spousal support was previously litigated in the initial post-decree motions and, therefore, was prohibited by res judicata.[1]

## D. Trial

{¶ 5} The magistrate conducted trial on Michael's motion to dismiss, Michael's motion to modify and terminate spousal-support obligations, and

---

[1] Michael's motion to dismiss addressed other motions filed by Wendy in the second round of post-decree litigation, but those motions are not relevant to this appeal and, accordingly, we will not discuss them.

Wendy's show-cause motions on February 10, 2025, and February 11, 2025.[2] Initially, the magistrate verbally granted Michael's motion to dismiss on the basis of res judicata and stated it would preclude Wendy from introducing evidence about Merit Brass' contributions to Michael's 401(k) account. The magistrate permitted Wendy's counsel to proffer evidence on that issue. The proffer stated that upon issuing a subpoena to Merit Brass in October 2024, Wendy learned the employer had contributed to Michael's 401(k) account, and Wendy subsequently received the 401(k) account statements in January 2025. The proffer also stated that Michael's W-2 forms dated 2016 through 2019 did not reflect contributions by either Michael or Merit Brass to the 401(k) account and the account statements demonstrated Merit Brass made contributions from 2017 through 2024. Account statements prior to 2017 were not provided.

{¶ 6} Following the proffer of evidence, the following testimony was introduced.

**E. Michael's testimony**

{¶ 7} Michael testified that his 401(k) account was in existence at the time of the divorce and the account was divided in the divorce. Michael further testified that to the best of his recollection, Merit Brass had contributed to the 401(k) account at the time of the divorce and Wendy's marital portion of the account included employer contributions. Michael also testified that he did not have an employment

---

[2] The February 2025 trial addressed all outstanding motions filed by Wendy and Michael, but we will only discuss those motions relevant to this appeal.

contract but an unspecified document existed that stated Merit Brass would match contributions he made to the 401(k) account. Michael could not recall whether that documentation was exchanged in prior litigation.

{¶ 8} Michael stated that he resigned from his position as Vice President of National Accounts with Merit Brass in December 2023 because he was 67 years old, had lived two-thirds of his life, and he wanted to reduce his activity: "I was tired working around 60 hours a week, give or take, burnt out, and a massive amount of responsibility, and I thought it was time to step away and live my life." Tr. 88. As part of his retirement package, Merit Brass paid Michael unused vacation pay plus 18 weeks of severance pay. Michael paid Wendy her proportionate share of the vacation pay as a Tier II obligation. Even though Michael did not consider the severance pay part of his base salary, he paid Wendy Tier I spousal support on those monies. Michael testified that he had not paid spousal support to Wendy since his last severance paycheck in either April or May 2024.

{¶ 9} Michael testified that upon retirement he no longer received a base salary and, therefore, he believed that he had no obligation to submit Tier I spousal-support obligations under the two-tiered structure. Michael further stated that he had no further obligation to remit Tier II payments because absent a base salary he was not required to pay Tier II support.

{¶ 10} A few months after Michael's retirement, on February 9, 2024, Achieventures LLC ("Achieventures"), a company owned by Michael's current wife, executed a consulting agreement with Merit Brass by which Michael, through the

LLC, would provide consulting services to his former employer. In turn, Merit Brass compensated Michael with hourly pay plus commissions on the sale of copper tubing ("consulting income"). Michael testified that his consulting income varied each week and he did not classify his consulting income subject to Tier I or Tier II spousal support because he no longer earned a base salary. Michael did not pay Wendy spousal support based upon his earnings from Achieventures.

{¶ 11} A July 2024 letter from Michael's attorney to Wendy's attorney was admitted into evidence. The letter stated that while Michael's income from Achieventures did not satisfy Tier I or Tier II spousal-support obligations, Michael would pay Wendy a percentage of that income based upon the two-tiered structure. Michael testified that there was a misunderstanding between him and his attorney because he never considered his consulting income subject to the two-tiered spousal-support structure and never approved submission of the July 2024 letter.

{¶ 12} The evidence also included August 2024 correspondence from Michael's attorney to Wendy's attorney that stated, "Upon further thought and discussion with the magistrate in our call yesterday, it is clear that the consulting income is not Tier II support since there is no longer Tier I support. Indeed, Michael's spousal[-]support obligation may at this point terminate."

{¶ 13} Michael testified to 2024 earnings from Achieventures and his investments. Michael stated that since retirement, he had taken distributions from his annuities because his expenses exceeded his income. Michael further stated that since retiring he had reduced numerous household expenses. Michael testified that

he had applied for social security benefits and then rescinded his application because he wanted to maximize those benefits at a later date. Michael denied hiding any income in excess of his base salary since the time of the divorce.

{¶ 14} Michael's current wife testified that she is currently employed and contributes to her and Michael's household expenses.

**F. Wendy's testimony**

{¶ 15} Wendy stated that she received her marital portion of the 401(k) account under the January 2016 divorce decree but at that time she did not have copies of the account statements nor did she know that Merit Brass had made contributions to the account. She stated that she first learned in November or December 2024, from her brother-in-law who used to work for Merit Brass, that the company had contributed to Michael's 401(k) account.

{¶ 16} Wendy stated that pursuant to the two-tiered spousal-support formula, she depended upon Michael to report his earnings greater than his base salary because she had no personal knowledge of that information. Wendy testified that her initial post-decree litigation included pursuit of Tier II spousal-support obligations and during that litigation she received payment for her proportionate share of life insurance premium payments and automobile expenses that she did not originally know were paid by Merit Brass to Michael. Wendy further testified that

she thought Michael had hidden some financial perks paid by Merit Brass to Michael for which she should have received her proportionate share:

> Well, we got divorced and his base salary after we got — as soon as we got divorced was drastically lowered. And his boss made it up to him in Tier II, doing other perks secretly, but I'm just starting to learn about a lot of things now unfortunately that were hidden from me for all these years.

Tr. 155.

{¶ 17} Wendy stated that she last received spousal support in May 2024, and she needs spousal support to satisfy her expenses. Wendy stated that she knew Michael would eventually retire but she did not plan for the time when she would no longer receive spousal support.

{¶ 18} Wendy testified that she retired from working as a schoolteacher in 2015, and she testified to her annual gross income from STRS retirement benefits, part-time tutoring work, and passive income from investments. Wendy testified that because her monthly expenses exceed her monthly income, she withdraws money from her savings to pay all her expenses. Wendy stated that to decrease expenses, she selects less expensive items at restaurants and travels less frequently. Yet, Wendy also testified that she was not willing to reduce her sizeable monthly expenditures on her wardrobe and hair care. Wendy indicated that she has a financial advisor but she does not have a monthly budget. Wendy indicated that she has not applied for social security benefits.

## G. Magistrate's Decision

{¶ 19} On March 10, 2025, the magistrate issued its decision granting Michael's motion to dismiss and finding that res judicata precluded Wendy's introduction of evidence about employer contributions to Michael's retirement account for purposes of calculating Tier II spousal support. The court's ruling rendered the portions of Wendy's show-cause motions that sought Tier II spousal-support obligations, including employer contributions to Michael's 401(k) accounts, moot. The magistrate ordered Michael to pay for four months of unpaid Tier I spousal support sought under the December 2024 show-cause motion, and the magistrate granted Michael's motion to modify support and reduced his spousal-support obligation to $0 per month.

## H. Objections and Trial Court's Decision

{¶ 20} Both parties filed objections and supplemental objections to the magistrate's decision, and on September 23, 2025, the trial court filed a detailed judgment entry that approved the magistrate's decision. The trial court stated that because Wendy could have raised in prior litigation her claims for employer perks constituting Tier II spousal support, the argument was barred by res judicata. The court also found that the matching employer contributions did not constitute income for purposes of spousal support. The court further found that the magistrate did not err when she (1) modified Michael's spousal support to $0; (2) found Michael no longer received a base salary or related Tier II earnings and, accordingly, eliminated the Tier I and Tier II spousal-support structure; (3) eliminated the

parties' obligation to annually exchange financial information; and (4) determined Michael's nonpayment of four months of Tier I spousal support did not rise to the level of contempt. This appeal stems from the court's September 23, 2025 judgment entry.

## I. Appeal

{¶ 21} On October 23, 2025, Wendy filed a notice of appeal and now presents six assignments of error, verbatim:

> Assignment of Error I: The trial court erred in granting Appellee's motion to dismiss and refusing to consider Appellant's evidence in support of her claims for additional Tier II support.
>
> Assignment of Error II: The trial court erred in granting Appellee's motion to modify spousal support by reducing his spousal support obligation to $0.00.
>
> Assignment of Error III: The trial court erred in reducing Appellee's spousal support obligation to $0.00 when he is under obligation to pay support based upon a two-tier obligation.
>
> Assignment of Error IV: The trial court erred in terminating the parties' agreement to a two-tier spousal support obligation.
>
> Assignment of Error V: The trial court erred in failing to grant Appellant's motions to show cause and motions for attorney fees relating to the nonpayment of Tier II spousal support.
>
> Assignment of Error VI: The trial court erred in failing to order that all prior orders not modified shall remain orders of the court.

## II. Legal Analysis

### A. Res Judicata

{¶ 22} In her first assignment of error, Wendy contends that the trial court erred when it granted Michael's motion to dismiss the portions of Wendy's

September 25, 2024 and December 31, 2024 show-cause motions ("show-cause motions") that related to Tier II earnings — including employer contributions to Michael's 401(k) plan — that the trial court determined were barred by res judicata and, accordingly, were moot. The trial court found Wendy could have raised these claims at the time of the divorce and during the initial post-decree proceedings. The trial court also found that even if res judicata did not apply, the 401(k) contributions did not constitute income.

{¶ 23} The application of res judicata is a question of law subject to de novo review. *Dinks II Co. v. Chagrin Falls Village Council*, 2005-Ohio-2317, ¶ 19 (8th Dist.).

{¶ 24} Res judicata incorporates claim preclusion and issue preclusion:

> Claim preclusion holds that "[a] valid, final judgment[] on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." [*Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995)], at syllabus. Issue preclusion, also known as collateral estoppel, provides that "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different[.]" *Fort Frye Teachers Assn. v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). While claim preclusion precludes relitigation of the same cause of action, issue preclusion precludes relitigation of an issue that has been actually and necessarily litigated and determined in a prior action. *Id.*, citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969).

*Lemons v. State*, 2020-Ohio-5619, ¶ 35 (8th Dist.).

{¶ 25} At issue in this case is collateral estoppel or issue preclusion.

> To successfully assert collateral estoppel, a party must establish: (1) the party against whom estoppel is sought was a party or in privity with a party to the previous case; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the previous case.

*Davet v. Mikhli*, 2012-Ohio-1200, ¶ 11 (8th Dist.), citing *Krahn v. Kinney*, 43 Ohio St.3d 103, 107 (1980).

{¶ 26} Res judicata has been applied to bar claims in motions to modify support obligations that were previously made between the same parties and finally decided by the court. *Mlakar v. Mlakar*, 2013-Ohio-100, ¶ 12 (8th Dist.). "Principles of res judicata apply both to issues that were actually litigated and adjudicated in a divorce action and also to matters that could have been litigated and adjudicated." *Manning v. Jusak*, 2013-Ohio-4194, ¶ 7 (8th Dist.), citing *Bean v. Bean*, 14 Ohio App.3d 358, 361 (12th Dist. 1983). "The obvious intent behind giving preclusive effects to prior judgments is to promote judicial economy and avoid endless relitigation of issues that have been finally decided." *Mlakar* at ¶ 11, citing *State v. Saxon*, 2006-Ohio-1245, ¶ 18. "In short, the doctrine of res judicata prevents us from considering arguments that could and should have been raised during earlier appeals." *Thiery v. Thiery*, 2024-Ohio-2936, ¶ 20 (2d Dist.), citing *Chepp v. Chepp*, 2011-Ohio-4451, ¶ 15 (2d Dist.).

{¶ 27} We find the doctrine of res judicata is dispositive of Wendy's first assignment of error. Michael's 401(k) account was in place at the time of the parties'

divorce. The account was classified as marital property, and Wendy received her marital portion of the account under the divorce decree.

{¶ 28} Michael testified that both he and his employer made contributions to the 401(k) account at the time of the divorce and the portion of the account that Wendy received included employer-paid contributions:

> THE MAGISTRATE: Okay. At the time of the divorce, [Michael], this was the — you had this retirement account [defense counsel] has given us the statements on. . . . So this, you did have this retirement account at the time of the divorce?
>
> MICHAEL: Yes.
>
> THE MAGISTRATE: Were you contributing into it at the time?
>
> MICHAEL: I was.
>
> THE MAGISTRATE: Was your employer contributing into it at the time?
>
> MICHAEL: To the best of my recollection, yes.
>
> THE MAGISTRATE: Okay. And at the time of your divorce, you divided this account, right, by way of a division of property?
>
> MICHAEL: That's correct.
>
> THE MAGISTRATE: And the marital portion was paid out to [Wendy]?
>
> MICHAEL: Yes, it was.
>
> THE MAGISTRATE: Do you believe to the best of your knowledge that some of the monies paid to her included the employer contributions to it?
>
> MICHAEL: To the best of my knowledge, yes.

Tr. 23-25.  Further, Michael testified that he did not have an employment contract with Merit Brass but documentation existed that stated the employer contributed to the 401(k) account.  Michael did not recall if that documentation was provided during the pendency of the divorce proceedings.

{¶ 29} Wendy denied that at the time of the divorce she knew Michael's employer contributed to the 401(k) account.  Wendy also denied receiving any 401(k) account statements at the time of the divorce and testified that it was not her responsibility to obtain those statements:

> THE MAGISTRATE:  Did you have any knowledge at the time [of the divorce] that the employer was matching [Michael's] contributions?
>
> WENDY:  Absolutely not.
>
> THE MAGISTRATE:  Okay.  Do you think you could have found that out later?
>
> WENDY:  It wasn't up to — I mean it wasn't — I wasn't receiving it.  So, it wasn't — it wasn't up to me.  I was supposed to receive that portion.  I didn't know about it.  I had no clue.
>
> THE MAGISTRATE:  Okay.  But at the time of the divorce, you knew of the existence of this retirement account?
>
> WENDY:  Correct.  And I thought I was entitled to half.
>
> THE MAGISTRATE:  That's fine.  Did you have statements at the time of the divorce of these summaries?  Did you ever see these?
>
> WENDY:  No.  I never got any statements.
>
> THE MAGISTRATE:  Okay.
>
> WENDY:  I just received half of what was in his account.

THE MAGISTRATE: Okay. Okay. So nobody showed you [these account statements]?

WENDY: No.

THE MAGISTRATE: No one got [these account statements] in evidence?

WENDY: No. No.

THE MAGISTRATE: No one requested [these account statements]? [These account statements were] not provided?

WENDY: No.

THE MAGISTRATE: Okay.

WENDY: Not to my knowledge, no.

Tr. 25-28. Wendy claims that she first learned about the employer contributions to the 401(k) account from her brother-in-law, which prompted her to subpoena related records from Merit Brass in October 2024 and the 401(k) account statements in January 2025. Wendy also states in her appellant brief that Merit Brass "had been paying matching contributions to [Michael's] retirement account from the date of the parties' divorce forward." Appellant's brief, p. 17.

{¶ 30} Michael and Wendy were represented by counsel in the divorce and initial post-decree proceedings and are the same parties to this instant action. The trial court's January 4, 2016 divorce decree constituted a final judgment on the merits of the divorce, and the initial post-decree proceedings related to employer-contributions were finalized on October 28, 2024. The division of Michael's 401(k) account was part of the divorce decree, and classification of employer perks as Tier II

obligations was addressed in the initial post-decree litigation. Wendy now attempts to relitigate whether employer contributions to the 401(k) account qualify as Tier II spousal-support obligations.

{¶ 31} Wendy alleges that she first learned about Merit Brass's 401(k) contributions from her brother-in-law in 2024, and as a result the information constituted a "newly discovered fact" not barred by res judicata. *See Montgomery v. Vargo*, 2018-Ohio-742. ¶ 19 (8th Dist.) ( "A previously undiscovered claim arising from newly discovered facts is not barred by the doctrine of res judicata."). Wendy also alleges that Michael concealed the employer contributions from her so that she was not privy to the information until she obtained the account statements in January 2025. While Michael contends his W-2 forms and pay stubs, which were introduced at the initial post-decree proceedings, reflected Merit Brass's contributions to the 401(k) account, Wendy disputes this fact.

{¶ 32} It is undisputed that Michael held the 401(k) account in 2016 and the parties divided the account as marital property in their divorce. Further, Michael testified that Metal Brass made contributions to the account in 2016 and documentation existed in support of that arrangement although Michael was not certain that the documentation was exchanged with Wendy. The parties litigated employer perks that constituted Tier II spousal-support obligations in the initial post-decree litigation. Based upon our review of the documents, we cannot agree with Michael's assertions that his W-2 forms and pay stubs reflected Merit Brass's contributions to the 401(k) account, but Wendy knew about the 401(k) account,

agreed to divide the account in the divorce decree, and could have sought discovery on the account at any time to obtain, at a minimum, the account statements. Wendy's failure to subpoena information related to the 401(k) agreement in 2016 or during the initial post-decree litigation — a form of discovery that she pursued in 2024 and 2025 — does not demonstrate that Michael hid the contributions from Wendy or that the contributions constituted newly discovered evidence.

{¶ 33} Under the facts presented in this case, Wendy's allegation that Merit Brass's contributions to the 401(k) account amounted to a Tier II spousal-support obligation is barred by res judicata. *See Dickens v. Bethlehem Baptist Church*, 1994 Ohio App. LEXIS 4060, *5-6 (8th Dist. Sept. 15, 1994) (Whether the claims of breach of contract or fraudulent misrepresentation could have been raised in a prior action for negligence could "be resolved by determining whether the facts upon which the new claims were based were discoverable at the time of the previous action.").

{¶ 34} For the foregoing reasons, res judicata precludes Wendy from pursuing Tier II spousal-support obligations about which she knew or should have known when this issue was previously litigated. Because the trial court's application of res judicata was not in error, we need not address the trial court's alternative theory that the employer's contributions did not constitute income. Wendy's first assignment of error is overruled.

## B. Reducing Spousal Support to $0

{¶ 35} Wendy argues in her second assignment of error that the trial court erred when it reduced Michael's spousal-support obligation to $0 per month.

Specifically, Wendy contends that modification was not reasonable nor necessary because Michael's testimony that he could not afford his spousal-support obligation was not credible; the court did not consider Michael's current wife's income; and the court should have imputed income to Michael based upon his available social security benefits and annuity income.

{¶ 36} "'The award of spousal support lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.'" *Hloska v. Hloska*, 2015-Ohio-2153, ¶ 12 (8th Dist.), citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130 (1989).

{¶ 37} Pursuant to the parties' judgment entry of divorce and attached separation agreement, the trial court retained jurisdiction to modify Michael's spousal-support obligation in the event a substantial change of circumstances occurred. The trial court found that Michael's retirement after 43 years of employment constituted a substantial change of circumstances. After finding a substantial change of circumstances, the trial court needed to consider the factors enumerated in R.C. 3105.18(C)(1) and determine whether continued spousal support was appropriate and reasonable. *See Mills v. Mills*, 2025-Ohio-452, ¶ 23 (8th Dist.), quoting *Preseren v. Preseren*, 2011-Ohio-5181, ¶ 12 (8th Dist.), citing *Calabrese v. Calabrese*, 2007-Ohio-2760 (8th Dist.); *Carnahan v. Carnahan*, 118 Ohio App.3d 393, 398 (12th Dist. 1998) ("'Once a trial court finds there is a change in circumstances, the court must then determine whether spousal support is still necessary, and if so, what amount is reasonable.'").

{¶ 38} A review of the record shows that the court considered the statutory factors including income, age, physical and mental conditions, duration of the marriage, and the parties' retirement benefits. The evidence included tax documents, Michael's consulting agreement, income documents, payment history, and retirement information. Michael testified about his new spouse's income and their shared living expenses. "We note that '[w]hile a new spouse's income cannot be considered in determining an obligor's ability to pay spousal support, the court may consider the fact that the obligor directly benefits from sharing living expenses with his new wife.'" *Mills at* ¶ 25, quoting *Preseren* at ¶ 16, citing *Feldman v. Feldman*, 2009-Ohio-4202 (8th Dist.); *Manzella v. Manzella*, 2005-Ohio-4519, ¶ 12 (12th Dist.), citing *McNutt v. McNutt*, 2005-Ohio-3752 (12th Dist.). The testimony and evidence demonstrated that both parties have financial resources, they both live off their savings and investments, and neither party receives social security benefits. The record shows Wendy earned more in 2024 than Michael.

{¶ 39} The magistrate assessed the application of each statutory factor, and the magistrate found that the change in circumstances — Michael's retirement — rendered the Tier I and Tier II spousal-support structure no longer appropriate. The magistrate further stated that even if the two-tiered spousal-support structure continued, the lack of a base salary would result in no Tier II earnings. Michael's spousal-support obligation was modified to $0 per month pursuant to the following reasoning that was adopted by the trial court:

Both [Michael] and [Wendy] could receive additional interest from the other monies they have access to (inheritance, lawsuit proceeds, investments, Social Security, etc.). The Court notes that neither party has applied to receive their Social Security benefits.

It is clear from [Wendy's] testimony and Affidavit of Income and Expenses ([Wendy's] Exhibit "A" whereby she lists and affirms $13,123.23 in monthly expenses for one person) that she is accustomed to a high quality of life in which she has not had to closely monitor her spending. She testified that she likes "nice things" and intends to maintain the quality of life she has grown accustomed to both during and after her marriage. It is also evident that, despite [Wendy's] testimony that [Michael] is entitled to retire, [Wendy] believes [Michael] remains under an obligation to fund said lifestyle. Despite the steady stream of income available to her outside of her spousal support, [Wendy] testified that she has not met with a financial planner to manage her budget and plan for the remainder of her life. [Wendy] demonstrates little fiscal responsibility and based on her testimony, is under the notion that [Michael] should be obligated to pay spousal support for several more years simply because she wants him to and feels that [Michael] has a duty to. That is not the law. At this juncture, [Michael] and [Wendy] have equal income and must manage their expenses wisely.

[Michael] testified regarding his current expenses and which of those his current spouse contributes towards. [Michael] testified that he is attempting to be conscientious of his spending.

Based upon the parties' current sources of income available to them and the change in circumstance related to [Michael's] retirement, the motion to modify is granted, effective September 20, 2024. The Court finds there has been a substantial change in circumstance warranting the parties' Tier I and Tier II structure inappropriate. Moreover, even if the Tier I and Tier II structure were to be applied, [Michael] does not currently have a base salary and therefore there can be no Tier II earnings in addition to his base salary. The Court does not find there to be any ambiguity in the parties' divorce decree, despite [Wendy's] implication of same. The Court further finds that [Michael's] spousal[-]support obligation is modified to $0.00 per month, effective September 20, 2024.

March 10, 2025 magistrate's decision.

{¶ 40} Where the record evidences the trial court's consideration of the R.C. 3105.18(C)(1) factors, and the judgment contains sufficient details for a reviewing court to establish that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the determination. *La Spisa v. La Spisa*, 2023-Ohio-3467, ¶ 116 (8th Dist.). Here, the trial court considered all the statutory factors and found it equitable to reduce Michael's spousal-support obligation to $0 per month. Based on the foregoing, we do not find that the trial court abused its discretion and, accordingly, Wendy's second assignment of error is overruled.

## C. Tier I and Tier II Spousal Support

{¶ 41} For ease of discussion, we will address the third and fourth assignments of error collectively. In her third assignment of error, Wendy argues that the trial court was required to retain and enforce the portion of the parties' separation agreement that specified payment of Tier I and Tier II spousal-support obligations. Further, Wendy argues that Michael's consulting income is comparable to a base salary upon which Tier I spousal-support obligations can be calculated and Michael's obligation to pay Tier II spousal support is not dependent upon his receipt of Tier I income. In her fourth assignment of error, Wendy argues that the trial court erred when it found the two-tier spousal-support obligation inappropriate and terminated the support structure.

{¶ 42} The parties' separation agreement did not identify specific terms that would trigger a change in circumstances to support a modification of spousal

support. Absent such terms, the court had to apply R.C. 3105.18(C)(1) and 3105.18(F) to determine whether a change in circumstances, which warranted a modification in the spousal-support obligation, had occurred. *Barry v. White*, 2023-Ohio-1570, ¶ 26 (8th Dist.).

{¶ 43} Conversely, Wendy proposes that under *Alkire v. Alkire*, 2021-Ohio-186 (9th Dist.), R.C. 3105.18(F)(2) mandated the trial court to retain the Tier I and Tier II spousal-support obligations because the parties voluntarily agreed to those terms within the separation agreement. We do not agree. The *Alkire* Court, in accordance with R.C. 3105.15(F)(2), had to follow the terms of the separation agreement that specified the exact change in circumstances that would prompt a modification of the husband's spousal-support obligation. The instant separation agreement provided no such restrictions. Thus, the trial court was not in error when it applied the R.C. 3105.18(C)(1) factors and determined a change in circumstances occurred that necessitated a modification of spousal support and found the Tier I and Tier II structure was no longer appropriate. In other words, the trial court did not need to maintain the same support structure if there was a change of circumstances.

{¶ 44} Additionally, Tier I spousal support was calculated on Michael's base salary and Tier II obligations were "in addition to Tier I spousal support" and calculated as "37.825% of [Michael's] earnings in excess of his base salary." Jan. 4, 2016 judgment entry of divorce. At the time of the divorce, Michael received both a base salary and additional earnings from Merit Brass. Following his retirement, he

no longer received a base salary, and we cannot reasonably interpret his current hourly rate and commissions — that varied each week — as comparable to a base salary subject to Tier I spousal-support obligations. Further, where the purpose of Tier II spousal support was to share with Wendy a portion of any earnings earned in excess of the Tier I earnings, we cannot agree that Michael may be subject to Tier II spousal-support obligations if he is not earning Tier I earnings. Absent Tier I earnings, Tier II spousal support no longer applies.

{¶ 45} "The goal of spousal support is to reach an equitable result," and "there is no set mathematical formula to reach this goal." *La Spisa*, 2023-Ohio-3467 at ¶ 91, quoting *Hloska*, 2015-Ohio-2153 at ¶ 11, citing *Kaechele*, 35 Ohio St.3d 93, 96 (1988). The trial court may eliminate the spousal-support structure if a change of circumstances occurs and the resulting award, which is based upon the statutory factors, is fair and equitable. The court found a change of circumstances — Michael's retirement — and determined that the R.C. 3105.18(C)(1) factors indicated a modification of support was appropriate and reasonable. Both Wendy and Michael had income sources from which they could support themselves, and Wendy earned more than Michael in 2024. Thus, the trial court's modification of spousal support to $0 was not an abuse of discretion. Accordingly, Wendy's third and fourth assigned errors are overruled.

### D. Contempt

{¶ 46} Wendy's fifth assignment of error argues that the court should have awarded her attorney fees in conjunction with the court's granting her four months

of spousal support. Essentially, Wendy argues that the trial court abused its discretion when it failed to find Michael in contempt.

{¶ 47} "We review a trial court's decision on contempt under an abuse of discretion standard." *Levy v. Levy*, 2014-Ohio-2650, ¶ 38 (8th Dist.), citing *Kapadia v. Kapadia*, 2011-Ohio-2255, ¶ 22 (8th Dist.), citing *In re Contempt of Modic*, 2011-Ohio-5396, ¶ 7 (8th Dist.).

{¶ 48} Michael initially informed Wendy, through counsel, that he would remit spousal support starting in May 2024, but he subsequently rescinded his offer. Michael then relied on comments allegedly made by the magistrate indicating he need not make spousal-support payments because his consulting income was not subject to the two-tiered spousal-support structure. The trial court ordered Michael to pay for four months of spousal support — from May 2024, when Michael submitted his last spousal-support payment, until September 2024, when Michael filed his motion to modify spousal support — but denied associated attorney fees because Michael's behavior did not rise to a contemptuous level.

{¶ 49} "In the domestic relations arena, judges are generally given broad discretion in the fashioning of equitable relief under the specific facts and circumstances of each case." *Levy* at ¶ 42, citing *Lemke v. Lemke,* 2011-Ohio-457, ¶ 24 (8th Dist.). "The purpose of civil contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Pugh v. Pugh*, 15 Ohio St. 3d 136, 140 (1984), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St. 2d 55 (1971), paragraph two of the syllabus.

{¶ 50} Pursuant to the domestic court's broad discretion on this topic, we cannot find that the court abused its discretion when it determined Michael's failure to pay four months of spousal support did not amount to contempt. *See Levy,* 2014-Ohio-2650 at ¶ 36-43 (8th Dist.) (Even though husband unilaterally reduced spousal-support payments, the trial court did not abuse its discretion when it declined to find husband in contempt.). Thus, Wendy's fifth assignment of error is overruled.

### E. Prior Orders

{¶ 51} In her sixth assignment of error, Wendy contends that the trial court erred when it failed to require the parties to annually exchange their paystubs, W-2 forms, and 1099 forms. Wendy further contends that absent such a requirement, she will be forced to file a motion to modify "whenever she only suspects [Michael] may be earning greater income." Appellant's brief, p. 28.

{¶ 52} The trial court was permitted to modify the parties' spousal-support structure and, in doing so, the court found it no longer applicable nor necessary for the parties to annually exchange their financial information. Such a decision is within the court's discretion and there is no basis for us to find the decision amounted to an abuse of discretion. Thus, Wendy's sixth assignment of error is overruled.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EILEEN A. GALLAGHER, J., CONCUR